The Regatta Bay Limited v. United States The Regatta Bay Limited v. United States The Regatta Bay Limited v. United States They exist, and would be relevant to the issues in the case. The Basic Facts pertain to a twenty year course of performance on a HUD loan issued in 1979, and the three key documents are a regulatory agreement, note, and deed of trust. And under the 20 years, Regatta made working capital loans pursuant to its limited partnership agreement, which HUD approved from the outset of the transaction to... But getting down to kind of the triggering event, you were 60 days late, which had never happened before, right? And isn't that... I understand there's a lot of evidence here, but isn't that triggering event sufficient to justify the acceleration? No, Your Honor, it's not, because of several reasons. One thing, the triggering event should have been the default. According to HUD, it was the default on the July payment, which was not for 60 days late. It was within the grace period, even under the note. But the acceleration was based on the late June payment, right? The acceleration, depending on when you're talking about, because HUD's identified more than one as the acceleration. Did the June 26th notice accelerate? It does not mention the June note, no. No, but it's based on the June note, isn't it? Because the July payment was not then beyond the grace period. It was based on the June, the lateness of the June payment. It doesn't say that. Well, but it doesn't say it explicitly, but isn't that the evidence that that's what it was? It says you're in default, you're late. It said a continuing material breach. At that time, the only indication of any default over that time was this $1.4 million demand. No, no, no, but the June payment, as Judge Breeder asked you, the June payment was 60 days late at that point, right? I don't think it was 60 days, but it was more than 30, so I assume that's part of it. Yeah, well, almost 60 days, right? It was late, but that's also, you have to notice, that's not the basis of this foreclosure. Because the notice of default said it was based on the July 1st payment being late. Well, the foreclosure was based on the fact that you hadn't made the payment that would be required by the acceleration. Isn't that correct? The foreclosure sale was based on the fact that you didn't make the payment, the full payment that would be required by the acceleration, right? It didn't say. That's one of the problems we have, and that's why there's issues of fact, and why we're entitled to conduct, we believe we're entitled to, ask this court to uphold our claim for entitlement to conduct discovery, because we never got to see the claim files. Why HUD made these highly peculiar demands for $1.4 million, which we know were based on expired claims under the limitations period. And, as I was going to say, the basic facts are that for 20 years, we got to follow this course of performance within the approved language of the limited partnership agreement, the working capital loans, and we know that there was an inspector general's audit in 1993 where HUD basically allowed this practice, which was allowed by the specifically authorized documents, and the course of performance for 13 years up to that time. And yet HUD came back and demanded, after the fact, $1.1 million within 30 days. That's what broke this project. There's no equity. HUD had also, by its own admission of Mr. Ewing, David Ewing, said that their intention was to take this property back. The June payment was not the basis of the foreclosure, and the letter that notified Regatta of an acceleration didn't say what the basis was. That's another reason we need discovery, because, as Your Honor points out, that's one reading of it, and that's what the government has argued, but there's other readings of it also. In fact, it doesn't answer the question. That's really why we think we need discovery, why we should be allowed to put our claims on. Because it's true if one carefully threads through a possible explanation of all these documents and draws these inferences favorably to HUD, they can state some arguments that they have stated, but we've also stated prima facie arguments, and we believe that the court in the setting below should draw all the reasonable inferences in favor of Regatta, so we have an opportunity to present that trial. But if the June payment's late, the deed of trust says acceptance of a late payment is not a waiver, and there's been several notices sent out saying you're late, you have a right to accelerate. Don't they have a right to accelerate based on the lateness of the June payment? That's the other point also. Thank you. They don't, actually. This trust deed does not allow it. As I believe is common in California as well and Nevada, the trust deeds require a notice and an opportunity to cure, and that's, I'm sure you saw in the briefs, one of the problems with the way this acceleration was reported to be performed and why we need discovery. You can't tell why they did it, but they for whatever reason didn't allow an opportunity to cure. They always had for the past 20 years. But they allowed an opportunity to cure after the acceleration by allowing you to make the payment, the accelerated payment, right? No, no. No? No, Nevada law has to be the late payment, not the accelerated payment. Well, Nevada law doesn't govern here. This is a federal contract. No. There's a statute. They're talking about, I'm sorry, respectfully. But put aside the question of Nevada law. After the acceleration, Regatta had the opportunity to avoid the foreclosure by making the full payment that resulted from the acceleration, correct? Actually, there should have been no requirement to make the full payment. That's not the question. Forget about whether there was a requirement. They were given the opportunity to avoid the foreclosure by making the full payment resulting from the acceleration. They never were. At all times HUD always said it's fully accelerated. Well, that's what I'm talking about. I'm saying they had the opportunity to avoid foreclosure by making the full payment, right? If that were possible. But that wasn't a requirement under the trustee or under the statute that it applies either. Because there's an opportunity to cure. Even under the Multimillion Mortgage Family Foreclosure Act, there's an opportunity to cure just the one payment that's late or however many payments are late. And when that one payment was tendered, it was rejected. That's another issue of fact that we need discovery. We believe, as I've said, there's some very meritless, unreasonable demands that were made here. And we believe we should go and find out why. I'm looking at a letter that's on page 559 of the appendix that says that the acceleration notice is based very clearly on the delinquent and owing amount from June 1st and July 1st. Well, the June 1st being, of course, the most delinquent at the time. I'm confused as to why you say that the June 1st wasn't the basis for the acceleration. Well, it's very important that you have to realize, Your Honor, this document was not provided to Regatta Bay. This is an internal document. Certainly, I understand that. But it's very clear that that's the basis for their acceleration notice. But the opportunity to cure has not been provided. And we have to realize that this time, federal law is not governing that foreclosure or that acceleration because HUD was not holding the loan at that time. That was held privately. So federal law is not going to govern that deed of trust. It was a Nevada deed of trust, and it can't be accelerated in Nevada without following a Nevada statute and the express language of the trustee, which even federal law requires. The express language of the trustee has to be followed. So when under Nevada law does the right to cure by making all past payments that are due expire and the accelerated amount is due? In other words, in California, you get a notice of default. You have a certain amount of period to bring all your late payments current. And then if you don't do it within a particular time, you have to pay the full accelerated amount if you want to avoid foreclosure. When is your view under Nevada law, does it change from an obligation to avoid foreclosure? Does it change from an obligation to make all past payments to an obligation to pay the accelerated, full accelerated amount? It's 35 days into the statute that's in Rest 107.080, unless it's 107, I apologize. It's one of those two. And it's the one we quoted. And under the trustee, it's kind of peculiar. It looks like there's an old form because you can see old under the statute before 1957 was 15 days. And this trustee says 15 days. So it could be said that the trustee provided for 15 days, but under the Nevada statute it's 35 days. But they didn't bring it current within those 35 days. Yes, they did. They made the payment on July 28th, and that was the payment that was rejected. And that was the indication that they weren't going to be requiring acceleration. And that's what was so highly peculiar because there was no grounds in the trustee for the acceleration, and it's consistent also with the highly peculiar demand for the $1.4 million which destroyed the equity. If I may say anything further. Thank you, Mr. Ray. Mr. Chandler. May it please the Court. Regatta spun out a number of arguments in their briefing here today, but I think the Court has hit on exactly the salient issue in this case, and that is the fact that once Regatta failed to make its June 1st payment by July 1st, there was a default under the deed of trust note and the deed of trust. And that was sufficient to allow HUD and Riley to do everything they did under each of those agreements. What about Nevada law? Nevada law just isn't relevant because what they've alleged is a breach of the agreements. They've alleged that the United States is responsible for Riley's breach of the deed of trust and the deed of trust note. And so even if Nevada law requires a different notice period or requires notice at all, it's simply not relevant because there still was no breach of the agreements. And there is nothing about Nevada law that would have affected HUD's ability to foreclose on the subject property. As of July 2nd, the time there was a default under the agreements, HUD's obligation to pay under the insurance policy to pay out on its insurance policy and to assume the note was in effect as of July 2nd. So when it did that later that month, it was within its rights to do that. In fact, it had an obligation to do that at the election of Riley. And then at that point, HUD was within its rights to accelerate and foreclose under the Multifamily Mortgage Foreclosure Act. Give me a timeline from the notice of default to the time the notice of default would expire under Nevada law or the time the cure under Nevada law would expire and when HUD took over. Well, under Nevada law, it's not entirely clear because there is a 35-day period, but it's not entirely clear when that period is triggered, whether it's from the time of default or from the time that the payment was initially due. Okay. Then when and with respect to that notice did HUD take over? I'm sorry, with respect to which notice? The time that the default occurred under Nevada law. From that period until the time that HUD... Well, Nevada law doesn't define the default. The agreements define the default. Nevada law just sets out notice requirements as a consequence of default. Okay. From the Nevada notice to the time that HUD became involved, what was that period? I don't know that there was a Nevada notice. HUD simply assumed the mortgage and then proceeded under the Multifamily Mortgage Foreclosure Act from that point forward and met all the MMFA requirements. So Nevada law, in your view, is totally irrelevant. That's right, because everything here, what Riley has alleged is a breach of the agreements, not the United States... But Riley was the note holder at the time and governed by Nevada law, wasn't he? But even if Riley failed to comply with Nevada law, HUD was still obligated to pay out under the insurance policy and had every right to assume the note and later accelerate the foreclose as it did. HUD sent an acceleration notice on May 22nd of 2001 and then foreclosed from that point, well, from the time it assumed the note in October of 2000, complied with the Multifamily Mortgage Foreclosure Act. So even if Riley's failure to have given notice under Nevada law was not compliant with Nevada law, it still wasn't a breach of the agreements because the agreements don't require that. In fact, the agreements allow for immediate acceleration without notice to the borrower. There is no notice requirement under the deed of trust note or the deed of trust. So regardless of whether Riley complied with Nevada law, it still wasn't a breach of the agreements, which is what Regatta is alleging here and what that alleges in the Portfolio of Claims. The only defenses that Regatta has asserted with respect to the default generally is just that there is this course of dealing. And clearly there just wasn't a course of dealing between Riley and Regatta that would have excused both the default and would have written the anti-waiver provision out of the agreement. First, obviously, there's the anti-waiver provision, which says that any failure or any decision by Riley not to enforce the default provision in any circumstance is not a waiver of that default provision going forward. Are you talking about provision of the deed of trust or some other agreement? That's in the note. Okay. Nope. All right. And even if Regatta had missed a payment previously, there's some unclarity in the record about whether the May 2000 payment had been missed. But even if it had, it's simply not enough to establish a course of dealing between Riley and Regatta that would write out the anti-waiver provision and the default provision. And throughout the parties' relationship, even when Regatta had missed payments within the cure period, they had always sent a letter, Riley had always sent a letter to Regatta reminding them of their obligation to make timely payments, assessing the late penalty, and telling them that if they didn't pay within 30 days, that notice would be given to HUD and they'd be deemed to have defaulted under the deed of trust in the note. As I understand your argument, it really doesn't matter what went on between Riley and Regatta. HUD could do what it did if there was a default. Am I wrong? As to your argument? Well, no, there has to be a default first. Right. Clearly, as of July 2, 2000, there was a default. Right. But once that happened, What I'm saying, as of that time, in your view, does it, the July 2, I think you said? That's right. As of July 2, in your view, does it make any difference whatsoever about what Riley and Regatta said to one another? It really doesn't, no, because HUD had the obligation to pay out under its insurance agreement with Riley based solely upon the default of the note. So if Riley said, okay, late payments are okay, in the past, that wouldn't make any difference. I believe that's right because the way the agreements operate, or at least there wouldn't be a breach of the agreement. There wouldn't be a breach of the agreement because the way the agreements operate is that once there's a default, there's no going back. There's no cure provided for in any of the documents that allow for the cure of a mature default. And certainly, I mean, Regatta's not alleged that there were any communications after July 2 that would have operated as a waiver of any provision for a cure of the default. And then certainly, HUD was well within its rights to foreclose on the note. HUD assumed the deed of trust on the note as of October 6, 2000. It sent a notice of foreclosure in May of 2001 in which it again stated that full payment of the principal amount on the note was due and began foreclosure proceedings in October of 2001 which is fully compliant with the Multifamily Mortgage Foreclosure Act. At that point, when HUD began to foreclose in October of 2001, Regatta had missed 16 payments and there's absolutely nothing in the record that would excuse Regatta from having made these payments from July. The last payment made was in July for the June payment. So HUD was clearly entitled to foreclose at the point when it did. Regatta has argued instead that Riley was required to meet both the Multifamily Mortgage Foreclosure Act and the requirements set out in the deed of trust itself in order to accelerate, but they simply don't read that way. The way the deed of trust reads is that upon an event of default, the holder is entitled to immediate acceleration without notice to the borrower and there is no requirement that the lender meet particular waiting periods or anything of that sort. That's really all. Those are all the points that I wanted to touch on. So subject to further questions by the court, the government's intent to stand on its previous witness. Do you understand that the question under the Nevada statute is whether the alleged violation of the Nevada statute is the failure to provide notice before the acceleration? Is that what we're talking about? That's what Regatta has alleged. That's correct. Okay. Thank you, Mr. Chandler. Thank you. Mr. Ray, you have four and a half minutes. Thank you. Just to clarify that last point, that is your allegation under the Nevada statute that the Nevada statute required notice before the acceleration and that wasn't provided? That's correct and that's quoted on page 20 and 21 of our brief and that's one of the most important areas that we disagree on as Nevada law does most absolutely certainly require that notice to be provided before and it specifically says acceleration must not occur and then it goes on to say the deficiency has to be explained. Deficiency performance is made performance of payment is made good. Does the Nevada statute tell you what happens if notice is not provided? Yes, you can't foreclose. So it's directed to the foreclosure action. Well, you can't accelerate. It says but acceleration must not occur and I underline that on page 21. No, but what is the remedy under the Nevada statute? Well, you would have a remedy under the note. In this case, it's a non-recourse note so in this situation it would be worthless without complying with the Nevada statute and so it's mandatory that they have to to be able to get the remedy they're looking for. That's why it is a very important point and I understand maybe whoever was looking at this in some other jurisdictions wasn't familiar but I don't think it's that uncommon but anyway I don't know the other jurisdictions but I know that Nevada requires a notice before it can be an acceleration. I believe California is the same. What you said it If they didn't give notice it would be a non-recourse note? Is that what you said? It is a non-recourse note. I'm sorry, when I say non-recourse what I mean is against the individual. They can all go against the property. Yeah, but in this case the property yielded more than was owed so there was an excess that went to the regatta, right? Well, it was a forced sale so there was yes, there was a little bit of excess but it was not a fair market value. If we are only dealing with a family multi-family housing mortgage act I may have reversed a couple of words in that but was there a failure to comply? By who? By regatta? Yeah. No, by HUD. Yes, because in the multi-family mortgage foreclosure act you can't commence a foreclosure until there is a default of the deed of trust. And that default is defined how? Well, you can't have an acceleration for example until you meet the conditions for acceleration which require the notice. Under Nevada law? Right, but under the trust deeds that specific terms also it says that. No, but the trust deed is not directed to the notice that you have to give before the acceleration. Yes, it is. Okay, that's another point I'm glad you brought that up. That's something also that's a misunderstanding by HUD. It does specifically say that and I've underlined that on page 19 of the I'm talking about the opening brief and I think I've mentioned this in the reply brief. It does say that the power of sale is after the lapse of 15 days during which the grantor shall have failed to make good such default. Where does the trust deed require notice before the acceleration? Well, it's the same paragraph. It says it says and it says they can at the option of the beneficiary they can be accelerated and thereupon there shall be the power of sale after the notice is provided. Well, yeah, but that's talking about the notice of the sale not notice before acceleration. No, it's not the notice of the sale. It's the notice of default. It says 15 days during which the grantor shall have failed to make good such default. That's the language of the trust deed. That's the way they work in Nevada and so just to make sure I understand you're saying to do this correct correctly there needs to be a notice of default under Nevada law a either a 15 or a 30 day period depending on whether you have a right to a statute to cure in the sense of making all your past payments and if you don't do that then there can be an acceleration after that. Am I understanding you correctly? If you don't no, you just have to allow right to cure as had been done for 20 years. No, but just follow me for a minute. So the correct procedure in your view would be notice of default under Nevada law a right to cure under Nevada law which is either a 15 or a 30 day period then if there was no curing during that period then there would be an acceleration and a right to sell? Typically the way it's done in those notices of default they say that it will be accelerated if you don't meet that obligation and the deed of trust also. The fact is you do get the opportunity to cure and then if that time is run then yes it is accelerated. The only way at that point you can make up for it is to pay the accelerated amount. So my timetable is right. You make that payment within that time then there can be an acceleration and then the property gets sold or you pay everything that's due. That's true except the one thing I don't think you have to do a notice of acceleration. Many of you did say the acceleration is effective as the statute said must not occur. It was unreasonable but HUD required the claim to be submitted without even verifying the compliance with the trustee or the regulatory agreement and the reasonableness of these demands and the return of the cure payment. The cure payment was made in July not June unlike what the government has stated. I don't believe that the federal law is sufficient to make a notice of acceleration and the return of the cure payment without verifying the compliance with the regulatory agreement. I don't believe that the  law is sufficient to make a notice of acceleration and the return of the cure payment without verifying the compliance with the regulatory agreement. I don't            of acceleration and the return of the cure payment without verifying the regulatory agreement. I don't believe that the